IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA, | § | |
| --- | --- | --- |
| | § | |
| V. | § | |
| | § | No. 3:16-cr-101-B |
| ROMAN SLEDZIEJOWSKI, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR
<u>RULE 15 DEPOSITIONS OF FOREIGN-BASED WITNESSES</u>**

The government moves under Federal Rule of Criminal Procedure 15 for an order authorizing pretrial depositions of three foreign-based witnesses – Mariusz Sokolowski; Henryk Brunengraber; and Marcin Dabrowski. *See* Dkt. No. 52. United States District Judge Jane J. Boyle referred the motion to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 53. And Defendant Roman Sledziejowski filed a response opposing the motion. *See* Dkt. No. 54.

The Court DENIES the motion for the reasons set out below.

**Applicable Background**

Through an indictment in this district returned in March 2016, Mr. Sledziejowski is charged with three counts of securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, based on transactions that occurred in July 2012. *See generally* Dkt. No. 1. The indictment specifies that the following conduct underlies the charges:

- Mr. Sledziejowski "manufactured false and fraudulent 'trades' between two customers of Trade Wall Street [("TWS"), his securities brokerage firm], in which one customer bought securities from another customer, knowing that Apex[, a clearing firm,] would front the necessary funds to cover the transaction (here, approximately $3.1 million), [Mr.] Sledziejowski, through the submission of false and fraudulent documents, wrongfully obtained and used to make Ponzi payments to victims of ongoing securities fraud." *Id.*, ¶ 13.
- By way of background, leading up to the July 2012 transactions, the indictment provides that, "[s]tarting at least as early as June 2009, [Mr.] Sledziejowski provided false and fraudulent account statements and other documents to investor clients of [TWS], purporting to show that the investor clients had significant account balances. In reality, which [Mr.] Sledziejowski then and there knew, the accounts either did not exist or did not contain anywhere near the amount of money as represented in the false and fraudulent account statements." *Id.*, ¶ 14.
- Then, "[b]etween on or about July 16, 2012, and on or about July 18, 2012 [Mr.] Sledziejowski, through [TWS], caused the sale of 932,121 American depositary receipts [("ADR")] of Grupa ADV S.A., bearing ticker symbol GPVSY, from [Leibowitz & Partners's] account to [MJW Investments's] account for approximately $3.1 million, which was then misappropriated from [MJW Investment's] account so that [Mr.] Sledziejowski could make Ponzi payments to defrauded investor clients of [TWS]." *Id.*, ¶ 15.

- According to the indictment, upon receipt of $3.1 million, Mr. Sledziejowski "submitted false and fraudulent Letters of Instruction to Apex, directing Apex to transfer proceeds of the trades to" an account controlled by Mr. Sledziejowski, who then transferred the funds to another account he controlled to be used "to make Ponzi-type payments to investor clients of [TWS] as well as payments to employees and entities [he] controlled." *Id.*, ¶¶ 16, 17, 18.

- The indictment then charges that Mr. Sledziejowski provided Apex bank transfer instructions that he knew to be false and fraudulent reflecting that MJW Investments had transferred funds necessary to cover the transactions and that Mr. Sledziejowski also falsely stated to Apex that Leibowitz & Partners had received the proceeds of the trades. *See id.*, ¶¶ 19, 20.

**Legal Standards and Analysis**

Federal Rule of Criminal Procedure 15(a) provides in applicable part that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial" and that "[t]he court may grant the motion because of exceptional circumstances and in the interest of justice." FED. R. CRIM. P. 15(a)(1). "District courts have broad discretion to grant or refuse a Rule 15(a) motion, and they should review these motions on a case-by-case basis, examining whether the particular characteristics of each case constitute 'exceptional circumstances.' The words 'exceptional circumstances' bespeak that only in extraordinary cases will depositions be compelled." *United States v. Lucas*, 516 F.3d 316, 348 (5th Cir. 2008) (quoting *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994); internal quotation marks

omitted); *see also United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993) ("Depositions generally are disfavored in criminal cases. Their 'only authorized purpose is to preserve evidence, not to afford discovery.' In particular, because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored." (quoting *Simon v. United States*, 644 F.2d 490, 498 n.12 (5th Cir. May 1981); citations and footnote omitted)).

Although "the textual words of Rule 15 do not expressly require 'materiality,' it is emphatically clear ... that the words 'in the interest of justice' call for the deposition to offer evidence that is material." *Dillman*, 15 F.3d at 389 (citing *Drogoul*, 1 F.3d at 1552; *United States v. Ontiveros-Lucero*, 621 F. Supp. 1037, 1038 (W.D. Tex. 1985)); *accord Lucas*, 516 F.3d at 348 ("Even if extraordinary circumstances are present, the proposed deposition must be 'material.'" (citation omitted)).

The dual textual limitations – because of exceptional circumstances and in the interest of justice – "are usefully elucidated in [an] Advisory Committee Note, which states that courts should grant depositions only 'if it appears that (a) the prospective witness will be unable to attend or be prevented from attending the trial, (b) the prospective witness' testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of justice.'" *United States v. Ordonez*, 242 F. Supp. 3d 466, 472 (E.D. Va. 2017) (quoting *United States v. Rosen*, 240 F.R.D. 204, 208 (E.D. Va. 2007) (quoting, in turn, FED. R. CRIM. P. 15 advisory committee's note, 1975 Enactment)). "Although these three requirements are important to the analysis required by Rule 15," given this Court's discretion under the rule, "they do not exhaust

the meaning of exceptional circumstances." *Id.* (citations and internal quotation marks omitted).

That said, "[t]he principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." *Drogoul*, 1 F.3d at 1552; *see also Ordonez*, 242 F. Supp. 3d at 472 ("Rule 15 depositions are available only to preserve material testimony. If the forecasted testimony is not material, Rule 15 should not come into play."). The Court therefore addresses that issue first.

I.  Materiality

The relevant case law generally addresses the materiality of forecasted deposition testimony from the perspective of a defendant movant. In that posture, the Eastern District of Virginia has developed the following analytical framework:

> "In the Rule 15 context, materiality has the same meaning that the Supreme Court gave the term in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, namely, that the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence." *United States v. Jefferson*, 594 F. Supp. 2d 655, 667 (E.D. Va. 2009) (internal citations omitted). Therefore, it is necessary to consider whether the forecasted testimony is exculpatory, in that it "tends to negate an element of the crime or to establish a defense, and whether it is cumulative of other evidence." *Id.* at 667 (quoting *Rosen*, 240 F.R.D. at 209).

> "The first step in the materiality analysis is to identify the elements of the crime; the next is to outline the forecasted testimony; the final step is to compare the elements of the forecasted testimony to ascertain whether the forecasted testimony negates any element of the charged crime or establishes a defense." *Rosen*, 240 F.R.D. at 209. If testimony is exculpatory, it is "necessary to consider whether it is cumulative of other existing and available evidence." *Jefferson*, 594 F. Supp. 2d at 667 (internal citations omitted).

*Ordonez*, 242 F. Supp. 3d at 472-73 (citations modified and brackets omitted).

This framework is consistent with authority from the United States Court of Appeals for the Fifth Circuit and with authority on which the Fifth Circuit has relied. *See, e.g.*, *United States v. Farfan-Carreon*, 935 F.2d 678, 680 (5th Cir. 1991) (in drug-trafficking case, a witness's "probable testimony is material, since it bears upon [the defendant's] knowledge of the hidden contents of the truck" (cited in *Dillman*, 15 F.3d at 389)); *United States v. Aggarwal*, 17 F.3d 737, 742 (5th Cir. 1994) (a witness's projected testimony not material where that testimony did not implicate "[t]he government's central theory of the case at trial"); *United States v. Tuma*, 738 F.3d 681, 689 (5th Cir. 2013) ("Tuma made only conclusory allegations that the CEO possessed relevant information to his defense. However, even assuming that the CEO personally possessed this information, the CEO could only demonstrate that CCS believed Arkla was operational in September 2006. The indictment charged continuous misconduct that occurred for more than a year after that point. It was CCS's own internal investigation that eventually led to this indictment."); *United States v. Kessler*, 165 F.3d 24, 1998 WL 870694, at *10 (5th Cir. Dec. 2, 1998) (per curiam) ("The proposed testimony in this case would not have provided any evidence to undermine an element of either of the offenses. ... Thus, we decline to find that the district court abused its discretion in denying the appellants' motion for a foreign deposition under Rule 15(a)." (citations omitted)); *Ontiveros-Lucero*, 621 F. Supp. at 1038 ("In order to obtain leave of Court to take the deposition of a prospective witness, a Defendant must, of course, show that the anticipated testimony would be material to some defense. The Defendant

in this case has carried that burden. The prospective witness whom he seeks to depose is his alleged coconspirator with regard to the criminal transactions charged in the indictment. Exculpatory testimony from a codefendant would clearly be material, although the jury would be called upon to judge its credibility." (citation omitted; cited in *Dillman*, 15 F.3d at 389)).

The fewer cases analyzing Rule 15 materiality where the government forecasts deposition testimony that it seeks seem to turn on whether that testimony will enable the government "to make its case against" the defendant – and, if so, the testimony is clearly material. *United States v. Allie*, 978 F.2d 1401, 1405 (5th Cir. 1992) ("The district court's finding of exceptional circumstances was supported by additional factors such as the aliens' illegal presence in the United States, their lack of ties to San Antonio, and the government's inability to make its case against Allie without their testimony."); *see also Drogoul*, 1 F.3d at 1553-54 ("The government also has made a strong showing of materiality. Indeed, the expected testimony of all thirteen prospective deponents is highly material to this case. At a sentencing hearing prior to the withdrawal of his guilty plea, Drogoul asserted that his former BNL superiors in Rome were fully aware of his loan activities regarding Iraq. Several pleadings which Drogoul has filed in the district court indicate strongly that this contention will be a central defense theory at trial. This defense goes to the very heart of the government's allegations that Drogoul went beyond the scope of his lending authority in extending credit to agencies of Iraq. The government expects the testimony of the prospective Italian deponents directly to refute Drogoul on this issue. Perhaps Drogoul expressed

it best when he acknowledged in his brief to this court: 'The testimony of these thirteen witnesses lies at the very core of the charges in the indictment, and its refutation the heart of the defense.' We can hardly imagine testimony more critical to this case." (footnotes and citation omitted; cited in *Dillman*, 15 F.3d at 389)).

Rule 15 materiality in the context of establishing a criminal case, then, must mean more than simply that the requested testimony is desirable or helpful. And the government's burden to establish Rule 15 materiality requires it do more than simply assert that the forecasted deposition testimony is material.

Here, the government's motion indicates that the three foreign-based witnesses will primarily offer testimony concerning events that preceded the charged conduct specified in the indictment – the July 2012 transactions and Mr. Sledziejowski's alleged behavior and statements following those transactions. *See* Dkt. No. 52 at 1-2:

> Relevant here, Mariusz Sokolowski was one of the early investors in Grupa ADV and held approximately 931,000 shares of Grupa ADV. Sokolowski later sold the shares, which were held in a holding company called Leibowitz & Partners, to Henryk Brunengraber and agreed to assist Brunengraber with the sale of the shares. In late 2011 or early 2012, Sokolowski engaged the defendant and his company, Trade Wall Street, to convert the Grupa ADV shares into [ADRs] and sell them on a U.S.-based exchange. Marcin Dabrowski, an attorney in Poland, was the registered agent of Leibowitz & Partners.
> Trade Wall Street's initial efforts to sell the shares were unsuccessful. Despite that difficulty, the defendant sent a trade confirmation to Leibowitz & Partners in June 2012 falsely reporting that 931,121 shares had been sold at $3.25 per share, with gross proceeds of $3,026,143.25. Believing that information to be true, Leibowitz & Partners, through its registered agent, Mr. Dabrowski, sent a Letter of Instruction to Trade Wall Street asking for the proceeds of the trade to be disbursed to Leibowitz's bank account in Switzerland. Leibowitz & Partners also notified the Polish stock exchange of the large transfer of shares.

*Id.* (citations omitted).

And the government's motion also indicates that two of these witnesses will offer testimony concerning an event that occurred as a result of the July 2012 transactions at the heart of the indictment, a Financial Industry Regulatory Authority ("FINRA") investigation:

> Relevant here, FINRA took testimony from the defendant concerning the Grupa ADV transactions. Among other things, the defendant stated that he received permission from Mr. Brunengraber to transfer the funds to the defendant's personal bank account and that Mr. Brunengraber provided the Letters of Authorization (purportedly signed by Mr. Dabrowski) to the defendant while in New York City. FINRA, however, obtained signed declarations from Mr. Brunengraber and Mr. Dabrowski in which both stated that they did not authorize the transfer of proceeds from the Leibowitz & Partners account into accounts controlled by the defendant and that they were not familiar with the entity Innovest Holdings until it was brought to their attention by FINRA.

*Id.* at 3-4 (citations omitted).

Comparing the projected testimony of the three foreign-based witnesses against the specific charges in the indictment – previously set out above – shows that their expected testimony neither "lies at the very core of the charges in the indictment," *Drogoul*, 1 F.3d at 1554, nor enables the government "to make its case against" Mr. Sledziejowski, *Allie*, 978 F.2d at 1405. In fact, the FINRA-related projected testimony is cumulative of other existing and presumably available evidence and therefore would not qualify as material under *Brady*. And – perhaps dispositively as to the Rule 15 immateriality of testimony from Messrs. Brunengraber and Dabrowski – the government admits that it "was prepared to try this case in March 2018 with only the

testimony of Mr. Sokolowski." Dkt. No. 52 at 6.

For these reasons alone, the government has not carried its burden to establish that, "because of exceptional circumstances and in the interest of justice," FED. R. CRIM. P. 15(a)(1), "the particular characteristics of [this] case," *Lucas*, 516 F.3d at 348, are extraordinary, overcome the disfavor attached to taking foreign depositions in a federal criminal prosecution, and thus weigh in favor of authorizing Rule 15 depositions of the three foreign-based witnesses the government identifies.

II. Unavailability

Even if the forecasted testimony could be considered material in the Rule 15 context, it is not at all clear that the government has carried its burden to show that each witness – most notably, Mr. Sokolowski – is unavailable. *See, e.g.*, *Ordonez*, 242 F. Supp. 3d at 473 ("Rule 15 permits a deposition only if the witness is unavailable to testify at trial.").

First, while the Fifth Circuit has held, in the context of unavailability as a qualifying extraordinary circumstance, that "an unservable deponent who is unlikely to return to the United States ... can be extraordinary," *Dillman*, 15 F.3d at 389 (citing *Farfan-Carreon*, 935 F.2d at 680), the deponent in *Farfan-Carreon* was unlikely to return because of the threat of prosecution, *see Farfan-Carreon*, 935 F.2d at 680 ("While the trial judge suggested that Pilingas might return voluntarily, we find that possibility unlikely in light of the government's threat to prosecute him if he entered the country." (footnote omitted)); *see also Lucas*, 516 F.3d at 348 ("[E]xtraordinary circumstances include, for example, situations where a potential deponent would not

likely *be able to* return to the United States." (emphasis added; footnote omitted)).

And, even considering a looser definition of unavailability, under which "[a] 'potential witness is unavailable for purposes of Rule 15(a) whenever a substantial likelihood exists that the proposed deponent will not testify at trial,' [i]t is the burden of the moving party to prove unavailability," which need not be "'conclusive ... before a deposition can be taken.'" *Ordonez*, 242 F. Supp. 3d at 473-74 (quoting *Drogoul*, 1 F.3d at 1553; ellipses omitted); *see also Drogoul*, 1 F.3d at 1553 ("A more concrete showing of unavailability, of course, may be required at the time of trial before a deposition will be admitted in evidence." (citing FED. R. CRIM. P. 15(e))).

At bottom, "[i]t is the Court's task to 'assess unavailability of a potential witness by carefully examining all reasonably reliable information and then making a reasoned judgment as to a person's unavailability.'" *Ordonez*, 242 F. Supp. 3d at 474 (quoting *Jefferson*, 594 F. Supp. 2d at 666; brackets omitted).

While the government need not at this time provide affidavits from the three foreign-based witnesses to establish their unavailability, that evidence or other similar evidence would have been helpful to making a reasoned judgment as to each witness's unavailability, particularly considering that Mr. Sokolowski was prepared to travel to the United States to testify and now cannot because of an unspecified conflict with the current trial setting. *See, e.g.*, *Drogoul*, 1 F.3d at 1553 ("The government has made a strong showing that seven of the thirteen potential deponents are substantially unlikely to be available to testify at Drogoul's trial. Because the witnesses are foreign nationals located outside the United States, they are beyond the subpoena power of the

district court. Under a treaty between the United States and Italy, potential witnesses may be ordered by the Italian government to testify in the United States, but one who refuses to do so may not be removed to this country. Thus, the prospective deponents cannot be compelled to testify at Drogoul's trial. The government has proffered a letter from an Italian judicial officer (the authenticity of which Drogoul has not challenged) certifying that the seven witnesses have declared in open court their unwillingness to testify in the United States. This evidence is potent proof of unavailability for purposes of Rule 15(a)." (citations omitted)).

III.    Other Related Issues

Because the Court has determined that the government has not carried its burden under Rule 15(a)(1), it need not address the government's request that Mr. Sledziejowski not be permitted to attend the depositions in person, *see* FED. R. CRIM. P. 15(c)(3), nor need it address Mr. Sledziejowski's request that the government pay certain expenses related to the requested depositions under Rule 15(d).

**Conclusion**

For these reasons, the Court DENIES the Motion for Rule 15 Depositions of Foreign-Based Witnesses [Dkt. No. 52].

SO ORDERED.

DATED: April 12, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE