IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| V. | § | |
| | § | No. 3:16-cr-101-B |
| ROMAN SLEDZIEJOWSKI, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER ON MOTION TO COMPEL**

As to emails of his that the government has obtained, some of which are protected by the attorney-client privilege, Defendant Roman Sledziejowski moves (1) to compel the government to disclose the methods and results of its taint process; (2) to prohibit the government from reviewing any additional potentially privileged materials during the pendency of this motion; and (3) to determine, at a hearing, the extent of the taint to the government's investigation and prosecution. *See* Dkt. No. 57 (the "MTC").

United States District Judge Jane J. Boyle referred the MTC to the undersigned United States magistrate judge for hearing, if necessary, and determination or recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 58.

The government filed a court-ordered expedited response to Mr. Sledziejowski's second request. *See* Dkt. No. 60; *see also* Dkt. No. 59. The government also filed a comprehensive response to the MTC. *See* Dkt. No. 61. And Mr. Sledziejowski moves for leave to file a reply brief. *See* Dkt. No. 62.

Neither side requests a hearing on the resolution of this motion – and, for the

reasons explained below, the Court determines that one is not necessary. The hearing that Mr. Sledziejowski requests would only occur – if "necessary" – "after reviewing the full details of the Government's taint process." Dkt. No. 57 at 1 n.1; *see also id.* at 10.

The Court GRANTS leave to file the reply and, for the reasons and to the extent set out below, GRANTS in part and DENIES in part the MTC.

**Applicable Background**

Through an indictment in this district returned in March of 2016, Mr. Sledziejowski is charged with three counts of securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, based on transactions that occurred in July of 2012. *See generally* Dkt. No. 1.

The MTC, however, focuses on events that occurred prior to the return of the indictment in this district. As explained in the MTC,

> Mr. Sledziejowksi's business, TWS Financial LLC ("TWS"), and Mr. Sledziejowski each filed for bankruptcy in a federal bankruptcy proceeding in the Southern District of New York. As part of the bankruptcy proceeding, Mr. Sledziejowski's estate was engaged in an adversary proceeding with Apex Clearing Corp. ("Apex Adversary Proceeding"). (Declaration of Joseph Lawlor, dated April 27, 2018 ("Lawlor Decl."), ¶ 4) Pursuant to a protective order issued in the Apex Adversary Proceeding on August 13, 2014, Mr. Sledziejowski was required to provide Apex with his entire personal email account, subject to a claw-back for emails that were (i) subject to the attorney client privilege (for which a list of 33 attorneys and firms were provided to Apex) and (ii) beyond the scope of the dispute between Apex and Mr. Sledziejowski. (*Id.*, ¶ 5)
> 
> On August 25, 2014, less than two weeks after Apex gained access to Mr. Sledziejowski's entire email account, the Government issued a subpoena to Apex seeking Mr. Sledziejowski's entire personal email account. (*Id.*, ¶ 6) The Government's request encompassed emails that were privileged and emails that were unrelated to the Apex Adversary Proceeding. On September 23, 2014, Apex provided the Government with

the entire contents of Mr. Sledziejowski's personal email account. (*Id.*, ¶ 7) The email account covers the time period of January 2008 through August 2014. (*Id.*, ¶ 8).

Dkt. No. 57 at 3-4 (footnote omitted).

But the government did reach out to Mr. Sledziejowski's then-counsel, Lawrence A. Garvey, prior to gaining access to the email account to discuss a review of the emails for those that implicate the attorney-client privilege. Mr. Garvey wrote to Assistant United States Attorney J. Nicholas Bunch on September 15, 2014:

> Thank you for taking the time to speak to [me] last week concerning the Apex/Sledziejowski subpoena. Having spoken to my client, we believe the process that you described where an [AUSA] and agent review the documents for privilege is acceptable. Could you memorialize that process in an email to me? and should I provide you a list of Attorneys that represented Roman in an individual capacity? Please advise.

Dkt. No. 60-1 at 2.

On September 17, 2014, AUSA Bunch responded to Mr. Garvey:

> As we discussed, based on your representation to me that the Runbox emails contain material covered by the attorney-client privilege, the government will, upon receipt of the emails, provide them to a taint team. That team will include a special agent from the FBI, along with an Assistant U.S. Attorney, who are not in any way involved with the prosecution. The taint agent and taint AUSA will review the materials, using the names of attorneys, firms, email addresses, etc., that you provide and redact all privileged information from the emails prior to them being provided to the case agent and/or myself.

Dkt. No. 60-2 at 2-3.

Mr. Garvey provided "a list of attorneys [that Mr. Sledziejowski] asserts as having an attorney client relationship with him personally" on September 19, 2014. *See id.* at 2. That list includes David Siegal and Joseph Lawlor, two attorneys now

representing Mr. Sledziejowski in this matter. *See id.*

Some 3 years and 4 months later, on February 2, 2018, the Court granted Mr. Sledziejowski's unopposed motion to substitute his current, retained counsel, including Mr. Siegal and Mr. Lawlor, under whose signatures the MTC was filed. *See* Dkt. No. 42 (finding that"[w]here, as here, Mr. Sledziejowski requests to substitute retained counsel of his choice for his appointed counsel, his request must be honored unless it is outweighed by the needs of fairness and the Court's calendar. This case has been pending for almost two years and [was then] set for a jury trial on March 19, 2018. But Mr. Siegal explained at the hearing that retained counsel would not be seeking a continuance and will be ready for trial on March 19, 2018. He further noted that they have complied with the January 29, 2018 pretrial motion deadline. The Court finds that the requested substitution of retained counsel will not unduly delay proceedings or lead to any unfairness and, accordingly, will be granted." (citation omitted)).

It appears that current counsel obtained access to a government file-sharing network hosting the email production no sooner than February 16, 2018. *See* Dkt. No. 57-1 at 1 ("On [that date,] a paralegal in the U.S. Attorney's Office contacted the defense offering access to the Government's secure file sharing network, 'USAfx.'"). Approximately 4 days later, Mr. Siegal inquired about the email screening procedures utilized in 2014. And AUSA Bunch responded on February 21, 2018:

> I am writing to follow up on your inquiry yesterday regarding the government's taint review process for the defendant's Runbox email account. In or about September 2014, we served a grand jury subpoena on Apex for the Runbox email account. Prior to production by Apex, we received an inquiry from the defendant's attorney, Mr. Lawrence Garvey,

concerning the need to run a filter process due to the presence of potentially attorney-client privileged material. We agreed to do that and requested that Mr. Garvey provide us with a list of names of attorneys, which he did on September 19, 2014. A copy of the correspondence with Mr. Garvey is attached. Apex produced the Runbox email account to us on or about September 24, 2014. It is marked as "g1A7 Runbox Emails" and was produced in discovery in this case, initially to Mr. Cox and recently to you. A taint agent was assigned to review the emails in 1A7 and extract any emails that contained one or more of the identifiers provided by Mr. Garvey. That process was done in October 2014, and the remaining emails were provided to the case agent for review in furtherance of the investigation.

Dkt. No. 57-3 at 2-3.

**Legal Standards and Analysis**

As an initial matter, the government represents in its expedited response to the MTC that "no one from the government will review any of the items identified as potentially privileged by the defendant in his motion during [its] pendency." Dkt. No. 60 at 1. Mr. Sledziejowski's request that the government be prohibited from reviewing any additional potentially privileged materials during the pendency of the MTC is therefore granted. And, because the Court has considered the May 14, 2018 letter brief filed as a motion for leave to file a reply [Dkt. No. 62], leave is granted.

But neither that reply nor the MTC articulate under exactly what authority Mr. Sledziejowski now moves – more than 3 years after reaching an agreement as to an email screening protocol, with the same lead prosecutor in this case – for an order (1) compelling the government to further disclose the methods and results of its taint process and (2) setting a hearing to determine the extent of the taint (if any) to the government's investigation and prosecution of him.

This is important because Mr. Sledziejowski spends the bulk of the MTC attacking the use of taint team procedures generally. *See* Dkt. No. 57 at 6-10. But there is no dispute that in September of 2014 he signed off on the use of such a procedure – as specifically spelled out in AUSA Bunch's September 17, 2014 response to Mr. Sledziejowski's then-counsel, Mr. Garvey, *see* Dkt. No. 60-2 at 2-3; *see also* Dkt. Nos. 60-1 & 60-2. So, contrary to Mr. Sledziejowski's assertion, the allegedly "improper black box [screening] approach" is not now being "advocated for by the Government." Dkt. No. 57 at 9. The parties instead have operated under an agreed-to screening approach, using a taint team procedure, for more than 3 years. And Mr. Sledziejowski cites no authority under which it is now proper to, in effect, renegotiate his 2014 agreement with the government.

Further, because Mr. Sledziejowski seeks to compel the government to disclose certain information – "the methods and results of its taint process" – the Court should consider whether disclosure of that information is required under the "rules of criminal procedure – or principles of due process." *Kaley v. United States*, 571 U.S. 320, 134 S. Ct. 1090, 1102 (2014) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559-61 (1977) ("There is no general constitutional right to discovery in a criminal case."); citations omitted); *cf. Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("While the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive." (citations omitted)).

Mr. Sledziejowski states in the MTC that his "email account [was] produced to

the defense by the Government, pursuant to its Rule 16 and *Brady* obligations." Dkt. No. 57 at 7.

But he fails to cite authority under which the government must also "describe its taint process fully and provide the defense with the supposed clean and privileged cuts that were allegedly made by the filter team," *id.* – particularly, here, where the government has described the screening process and has posited that Mr. Sledziejowski's counsel can run the same searches in the same universe of emails to cull the same privileged emails, *see* Dkt. No. 61 at 3 ("Not only did the government disclose this process and obtain agreement from prior counsel, the government disclosed it to current counsel. Despite that agreement and disclosure, the defendant now claims that he has 'no idea' which emails were identified as a privileged. Yet as a result of the defendant's involvement in the filter process at the outset as well as the government's production of discovery in this case, the defendant can do make that determination – he has the same information available to the government to identify which items would have been segregated as potentially privileged. The government produced the entire Runbox email account to the defendant. The defendant provided a list of relevant attorney names. The defendant can use those attorney names to determine which emails were identified and segregated according to the agreed-to process. As a result, the defendant has had multiple opportunities to meaningfully participate in the process of filtering privileged communications out of the Runbox email account."); *cf. United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009) ("As a general rule, the government is under no duty to direct a defendant to exculpatory

evidence within a larger mass of disclosed evidence." (collecting cases)), *vacated in part on other ground*, 561 U.S. 358 (2010); *accord United States v. Stanford*, 805 F.3d 557, 572 (5th Cir. 2015).

For these reasons, the Court finds no basis to compel the government to disclose the information that Mr. Sledziejowski seeks. Accordingly, there is no reason to hold the requested hearing. And, to be clear, although Mr. Sledziejowski advocates that "the Court would be well within its power to dismiss the Indictment for impermissible taint," Dkt. No. 57 at 10, as he concedes, this is not a motion requesting dismissal or a finding of taint, *see id.* Rather, this is a motion seeking in the first instance for the government to disclose its "clean set" – even though the agreed upon protocol does not require that. Whatever other motion Mr. Sledziejowski may or may not later file, this motion must be denied.

Before concluding, however, the Court must acknowledge authority not raised by Mr. Sledziejowski holding that, "[w]here the government chooses to take matters into its own hands" – by using taint team procedures – "rather than using the more traditional alternatives of submitting disputed documents under seal for *in camera* review by a neutral and detached magistrate or by court-appointed special masters, it bears the burden to rebut the presumption that tainted material was provided to the prosecution team." *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997) (citations omitted). But, even where the government unilaterally utilizes taint team procedures – which the record here does not show to have occurred – "[t]he government is, of course, free to rebut this presumption, by showing, for example, procedures in

-8-

place to prevent such intragovernmental communications." *Briggs v. Goodwin*, 698 F.2d 486 (D.C. Cir.) (cited in *Neill*), *vacated on other grounds*, 712 F.2d 1444 (D.C. Cir. 1983); *see, e.g.*, *Heebe v. United States*, Civ. A. No. 10-3452, 2012 WL 3065445, at *5 (E.D. La. July 27, 2012) (examining *Neill* – in which "the court found that because the prosecution team testified that it had received no privileged information, and no evidence existed to show that the 'taint team' had disclosed information to the prosecution team, the Government had shown that, in fact, no tainted material was provided to the prosecution team" – and, because, in *Heebe*, "the clean team process was corrupted during the on-site search, when individuals not on the clean team handled potentially privileged materials," requiring, under *Neill*, "that the Government maintain a log of which prosecutors and Government agents had access to the potentially privileged materials in order to prevent further corruption"); *see also United States v. Solnin*, No. 12-CR-0040 (ADS), 2015 WL 6442361, at *9 (E.D.N.Y. Oct. 23, 2015) ("[T]he facts of *Neill* reflect a privilege review process substantially similar to that outlined by the AUSAs in their supporting materials and at oral argument. Thus, the Court is satisfied that, similar to *Neill*, the Government in this case carried its burden to rebut any presumption of harm."). The background of this issue as set out above shows that the government did not impose a taint team procedure on Mr. Sledziejowski in 2014.

A separate problem also afflicts Mr. Sledziejowski's MTC. His counsel generally asserts that his review of the entirety of the emails in February of 2018 revealed categories of emails – not specific emails – that are privileged but that he does not

know without a doubt are among the emails excluded based on the agreed-to screening procedures implemented in 2014. *See* Dkt. No. 57-1 at 1-2. Without offering an opinion on any waiver arguments that could be made in response to a motion to dismiss that could be filed, a defendant generally may not wait "more than three years after the search" to raise even "arguably valid objections to the Government's taint procedures." *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1039-40 (D. Nev. 2006); *see also id.* at 1046 ("[T]he Court does not agree that a mere generalized assertion that seized records may contain attorney-client privileged materials is, in and of itself, sufficient to preserve the defendant's privilege indefinitely." (citations omitted)). Here, as in *SDI*, Mr. Sledziejowski does not assert that he lost access to his email account as a result of the government subpoena – thus, years ago, he "could have reviewed [his emails] to identify additional privileged attorney-client communications." *Id.*; *see also id.* at 1046-47 (concluding that "it was unreasonable for SDI to fail to take steps to identify and assert its privilege regarding other documents within a reasonable time after it was granted access to the seized records" and that, "[a]ssuming, for sake of argument, that the Government had refused to permit SDI to inspect and copy the seized records after February 21, 2002, it would have been incumbent on Defendants to timely pursue judicial action to obtain the records so that additional privileged documents could be identified and objections made to the Government's use of those records").

## Conclusion

The Court GRANTS Defendant Roman Sledziejowski leave to file the reply brief

[Dkt. No. 62] and GRANTS in part and DENIES in part his motion to compel and for a hearing. Specifically, to the extent that the government represented in its expedited response to the motion that "no one from the government will review any of the items identified as potentially privileged by the defendant in his motion during [its] pendency," Dkt. No. 60 at 1, the second request for relief is granted, but the requests for the government to further disclose the methods and results of its taint process and for a hearing on the same are denied.

SO ORDERED.

DATED: May 18, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE